REVISED SEPTEMBER 29, 1999

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 98-20571

———————————

ROBERT ARTHUR HALL,

Plaintiff-Appellant,

v.

TOMMY B. THOMAS, Sheriff; ET AL.,

Defendants,

TOMMY B. THOMAS, Sheriff; K.W. BERRY, Major; MIKE SEALE,
Doctor; M.W. QUINN, Major; C. TRINH, Doctor; DONALD KLEIN,
Doctor; MARK CHASSAY, Doctor; K. HOWARD, Nurse; M. GUICE,
Doctor; A. PHI, Doctor; KHAM LUU, Doctor,

Defendants-Appellees.

———————————————————————
Appeal from the United States District Court
for the Southern District of Texas
———————————————————————
September 28, 1999

Before POLITZ, DeMOSS and BENAVIDES, Circuit Judges.

PER CURIAM:

Appellant Robert Arthur Hall ("Hall") appeals the decision

of the district court dismissing his 42 U.S.C. § 1983 and

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132,

claims for failure to state a claim against appellees Sheriff

Tommy B. Thomas ("Sheriff Thomas"), Major K.W. Berry ("Major

Berry"), Major M.W. Quinn ("Major Quinn") and Nurse K. Howard

("Nurse Howard"), and on the merits as to Drs. Mike Seale, C.

Trinh, Donald Klein, Mark Chassay, M. Guice, A. Phi and Kham Luu

(collectively, "the doctors").  We affirm.

## I. Factual and Procedural Background

The United States Marshals arrested Hall on February 21, 1995, for a violation of the terms of his parole.  They promptly delivered Hall to the custody of the Harris County Jail ("HCJ").  While incarcerated, Hall objected to the quality of the medical treatment he received.  So, on March 18, 1997, alleging that the HCJ had violated § 1983 and the ADA, Hall filed suit.  He averred that the HCJ medical staff was deliberately indifferent to his kidney condition, to his orthopedic pains, to his diabetes, and to his epilepsy.

The district court granted summary judgment for the defendants on January 15, 1998.  In its opinion, the court found that Hall had failed to state a claim against Sheriff Thomas, Major Berry or Major Quinn because Hall had failed to specify any conduct on the part of these individuals that contributed to a deprivation of a constitutional right.[1]  With respect to the doctors, the court held that Hall had not presented any evidence of conduct that constituted deliberate indifference to a serious medical need.  The district court also dismissed the ADA claims

---

[1]  In a supplemental opinion dated June 5, 1998, the district court dismissed Hall's case against Nurse Howard on the grounds that Hall had not set forth a claim against Nurse Howard that was not foreclosed by the January 15, 1998 opinion.

2

against all defendants because it held that the ADA did not apply to prisons.  Finally, the district court held that even if the ADA did apply to prisons, the defendants would be qualifiedly immune from suit thereunder because Hall's rights under the ADA were not clearly established at the time of the alleged violations.

Hall filed a <u>pro</u> <u>se</u> appeal.

## II.    Standard of Review

We apply <u>de</u> <u>novo</u> review to a district court's decision to grant summary judgment.  <u>See</u> <u>Prytania Park Hotel, Ltd. v. General Star Indem. Co.</u>, 179 F.3d 169, 173 (5th Cir. 1999).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Under this standard, all fact questions must be viewed in the light most favorable to the non-moving party, and questions of law are reviewed <u>de</u> <u>novo</u>."  <u>Horton v. City of Houston</u>, 179 F.3d 188, 191 (5th Cir. 1999).

We likewise review the district court's decision to dismiss a complaint under Rule 12(b)(6) <u>de</u> <u>novo</u>.  <u>Lowrey v. Texas A & M Univ. Sys.</u>, 117 F.3d 242, 246 (5th Cir. 1997).  This disfavored

3

motion should not be granted unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In so determining, the district court must liberally construe the complaint in favor of the plaintiff and assume that all facts pleaded in the complaint are true.  See Brown v. Nationsbank Corp., — F.3d — (5th Cir. 1999), *available at* 1999 WL 695692 (5th Cir. (Tex)), *4.

### III.    The ADA Claim and Qualified Immunity

Hall argues that Pennsylvania Dep't of Corrections v. Yeskey, 118 S. Ct. 1952 (1998), mandates reversal of the district court's dismissal of his ADA claim.  Moreover, Hall maintains that the district court erred when it found the defendants were entitled to qualified immunity.  The defendants counter that, though Yeskey alters one of the district court's holdings, it does not disturb the lower court's alternative holding regarding qualified immunity because Hall's right to sue under the ADA was not clearly established prior to Yeskey.

Yeskey squarely and unmistakably holds that "the ADA plainly covers state institutions without any exception that could cast the coverage of prisons into doubt." Id. at 1953.  Thus, the district court did err, though understandably so, when it held that the ADA did not apply to prisons.

Nevertheless, we need not reverse the outcome.  The district

4

court correctly held that the defendants were entitled to qualified immunity.  The wrongful act here alleged is the administration of medical care to Hall; this is a discretionary function.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine "reasonableness" for purposes of this standard, we look to the legal rules that were clearly established at the time of the alleged violation.  Anderson v. Creighton, 483 U.S. 635, 639 (1987).  "Objective reasonableness is a matter of law for the courts to decide[.]"  Williams v. Bramer, 180 F.3d 699, 702 (5th Cir. 1999).

Under Siegert v. Gilley, 500 U.S. 226 (1991), we must apply a two pronged test to ascertain the viability of a defendant's assertion of qualified immunity.  First, we must examine whether Hall has pleaded an ADA violation.  See id. at 232; see also Petta v. Rivera, 143 F.3d 895, 899 (5th Cir. 1998).  The district court found that Hall had not stated a claim under the ADA.  We agree.  At no place in the complaint does Hall allege that a defendant's specific, individual conduct discriminated against him because of his disability.  In fact, Hall claims that an unserved defendant, Deputy Sheriff Marcorif Thomas, mistakenly

5

indicated that Hall was not disabled (or, at least, not as disabled as he was) upon his admission to HCJ in February, 1995. Thus, any alleged discriminatory conduct could not have been "because of" Hall's disability, since the relevant actors were not apprised of Hall's status as a disabled person.

Even if Hall had stated a claim under the ADA, however, the defendants would still be entitled to qualified immunity. Under the second prong of the Siegert test, we must ask whether the defendants' conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation. Siegert, 500 U.S. at 231-32; see also Evans v. Ball, 168 F.3d 856, 860 (5th Cir. 1999). The clearly established law prior to Yeskey did not include the principle that the ADA applied to prisons because neither the Fifth Circuit nor the Supreme Court had spoken on the issue. See Gunaca v. State of Texas, 65 F.3d 467, 475 (5th Cir. 1995) ("The right . . . was not clearly established at the time [defendant] allegedly violated it because neither the Fifth Circuit nor the Supreme Court had addressed [it.]"). Moreover, a circuit split existed on the very question. Compare, e.g., Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 487 (7th Cir. 1997) (ADA applies to prisons) with Amos v. Maryland Dep't of Pub. Safety and Correctional Servs., 126 F.3d 589, 601 (4th Cir. 1997), judgment vacated by 118 S. Ct. 2339 (1998) (ADA does not apply to prisons). And we have consistently

6

and "decisively rejected the retroactive application of new legal standards to . . . claims involving qualified immunity." Harper v. Harris County, Texas, 21 F.3d 597, 601 (5th Cir. 1994). Therefore, Hall's right to be free from discrimination on the basis of his disability in prison was not clearly established at the time of the alleged violations, and the defendants could not reasonably have known that their actions might incur liability under the ADA. For these reasons, the defendants are entitled to qualified immunity, and we therefore affirm the decision of the district court on this point.

## IV.    The § 1983 Claim

Hall argues that his complaint states an Eighth Amendment claim because it alleges that the medical staff failed to administer 180 doses of his seizure medicine over a one year period, and that such a lapse evinces deliberate indifference to a serious medical need.[2] Hall further complains that Drs. Chassay and Luu unethically doubled his dosage to compensate for the missed medication. The doctors counter by arguing that Hall himself refused to take his seizure medication on 28 separate occasions, and, at other times, refused to appear when the nurse

---

[2] Since Hall did not argue on appeal that the medical treatment he received for his chronic kidney ailment, his orthopedic pain or his diabetes constituted deliberate indifference to a serious medical need, he has abandoned any claims he had with respect to these matters. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993) ("[Appellant] has abandoned these arguments by failing to argue them in the body of his brief.").

arrived to dispense the medication.  The doctors also argue that the double dosages of medication were not dangerous, that they adequately monitored Hall's progress on the medicine, and that no evidence suggests that Hall was ever over-medicated.

The district court found that Hall's allegations, even if true, did not describe deliberate indifference to a serious medical need.  We agree.  "To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id.  "Deliberate indifference to serious medical needs of prisoners," for instance, "constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976), order vacated by 429 U.S. 875 (1976)).  To be deliberately indifferent, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety[.]" Farmer, 511 U.S. at 837; see also Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).  For this reason, allegations of malpractice or negligence will never state a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105 ("[A] complaint that a physician has been negligent in diagnosing or treating a

8

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); see also Stewart, 174 F.3d at 534 ("[A]lthough inadequate medical care may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

The summary judgment evidence reveals that Hall refused to take his seizure medicine on 28 occasions. Moreover, Dr. Seale testified that the efforts of Drs. Chassay and Luu to bring Hall's medication levels within therapeutic limits were not dangerous, and that Hall was not over-medicated. Dr. Seale further testified that even if the nurses were intentionally refusing to dispense the seizure medication to Hall–a contention that Dr. Seale vigorously opposed–the doctors Hall sued were not responsible for these acts, since such conduct would have been in clear contravention of the prison's policy and the doctors' mandate. Finally, at a doctor's appointment on June 4, 1996, Hall told Dr. Phi that he had "no complaints" with his seizure medication. Hall also confided that his last seizure occurred eight months prior, presumably in November, 1995, a month in which Hall refused to take his seizure medication for two days in a row. In response to this testimony, Hall cites only his own conclusory pleadings. Yet Hall's subjective complaints, unsupported by evidence, are insufficient to defeat the doctors' summary judgment evidence. See Morris v. Covan World Wide

9

<u>Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998) ("[T]he nonmoving party may not rest upon the mere allegations or denials of its pleading, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice.").

The overwhelming evidence demonstrates that Hall had access to his doctors, who prescribed a helpful medication, the dosage of which varied, at least in part, because of Hall's own conduct. Any additional causes for Hall missing his seizure medication cannot be attributed to Hall's doctors. And despite the lower dosages, Hall was seizure free between November 1995 and June 1996. He even told his doctors he had "no complaints." This is simply not a scenario consistent with deliberate indifference to a serious medical need. At its most egregious, Hall's evidence may suggest negligence, but that is insufficient to support an Eighth Amendment claim. We therefore agree with the district court and affirm its grant of summary judgment to the doctors.

## V.    Conclusion

The district court erred in finding that the ADA did not apply to prisons, but we AFFIRM because the defendants are entitled to qualified immunity. Moreover, we AFFIRM the grant of summary judgment to the doctors because Hall did not present evidence of facts consistent with a deliberate indifference to a serious medical need.

10

AFFIRMED